Richard A. Zimmerman, Esq.
Attorney for Plaintiff
233 Broadway – Suite 2202
New York, NY 10279
Richard A. Zimmerman (RZ 0963)
(212) 962 -1818
Patrick C. Crilley (PC 9057)
*Of Counsel*
(212) 619-1919


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
AMADOU BHOYE SOW,                         ECF CASE

                Plaintiff,                 08 Civ. 4114 (CM)

     -against-
                                               REPLY
PS INTERNATIONAL, LTD.               MEMORANDUM OF LAW

                Defendant.
------------------------------------------------------------x


REPLY MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT'S MOTION
TO COMPEL ARBITRATION IN LONDON
AND STAY THIS NEW YORK ACTION


Submitted:
August 4, 2008


Patrick C. Crilley (9057)
*Of Counsel*

# TABLE OF CONTENTS

Preliminary Statement .................................................................................................... 1

Facts .............................................................................................................................. 1

Argument

    I. PLAINTIFF, IN NUMEROUS CONTEMPORANEOUS STATEMENTS, ADMITTED THE EXISTENCE OF A WRITTEN CONTRACT THAT CONTAINED AN ARBITRATION CLAUSE ............................................... 2

    II. DEFENDANT'S MOTION SHOULD BE GRANTED EVEN <u>WHEN</u> APPLYING A SUMMARY JUDGMENT STANDARD ............................. 5

Conclusion .................................................................................................................... 9

# TABLE OF AUTHORITIES

<u>Cases</u>

*Bensadoun v. Jobe-Riat,* ................................................................................................ 6
316 F.3d 171 (2d Cir. 2003)

*Burger King v. Horn & Hardart Co.,* ............................................................................ 7
893 F.2d 525, (2d Cir. 1990)

*Grain Traders v. Citibank, N.A.,* ................................................................................... 6
960 F. Supp. 784, (SDNY 1997)

**Preliminary Statement**

Defendant, PS International, LTD. ("PSI"), respectfully submits this Reply Memorandum of Law in support of its motion to compel arbitration in London and stay the present New York action, pursuant to the Federal Arbitration Act, 9 U.S.C. §1 and the New York Convention, codified at 9 U.S.C. §201 *et seq.*

Plaintiff, in its opposition papers, posits that *"The fundamental question for this Court is whether the documents submitted establish that the parties had a meeting of the minds and in fact agreed to arbitrate any dispute arising from an [sic] May 19, 2006 order for the purchase and sale of sugar."*[1]  Defendant joins the Plaintiff in posing this "fundamental question" with respect to the operative May 19, 2006 Agreement to the Court.

The only logical conclusion, supported by the documentation submitted, including

i) Plaintiff's signature on the May 19th 2006 Agreement directly below the arbitration clause;
ii) Plaintiff's repeated reference, in contemporaneous writings, to the May 19th 2006 Agreement as "the contract" and "the signed contract"; and
iii) Plaintiff's counsel's own initial reference to the arbitration agreement between the parties to support its commencement of arbitration in the Spring of 2007,

is that there was a meeting of the minds and the parties expressly agreed to arbitrate any disputes before the Refined Sugar Association in London.

**Facts**

Defendant hereby incorporates its brief fact statement from its first Memorandum of Law. The additional relevant facts are contained in the accompanying Declarations submitted with these reply papers, including the Reply Declaration of Birgitta Thomas, the Declaration of David Barnett, a qualified arbitrator before the Refined Sugar Association ("RSA"), and the Reply Declaration of Defendant's attorney, Patrick C. Crilley. These reply papers together with

---

[1] Opposition Declaration of Kyle B. Watters, paragraph 4.

1

the initial moving papers, provide irrefutable evidence of the written arbitration agreement and expose the Plaintiff's opposition argument as unsupportable and completely without merit.

## ARGUMENT

### I.

### PLAINTIFF, IN NUMEROUS CONTEMPORANEOUS STATEMENTS, ADMITTED THE EXISTENCE OF A WRITTEN CONTRACT THAT CONTAINED AN ARBITRATION CLAUSE

In the Complaint filed to commence this action, Plaintiff refers to its "oral agreements" with the Defendant and thereby purposely misleads this Court toward a misunderstanding that no written agreements were concluded between the parties. (See Exhibit "J" to the Reply Declaration of attorney Patrick C. Crilley, a copy of the Complaint, particularly at paragraphs 9, 10, 21 & 27, all of which assert "oral agreements".) The Plaintiff further maintains that it never "agreed orally to any such [arbitration] agreement." [2]

Leaving aside the first two agreements for the shipment of sugar to the Plaintiff, which agreements were dated March 9, 2006 and April 12, 2006 [3], we concentrate here on the operative agreement of May 19th 2006.

In her first Declaration PSI's Ms. Birgitta Thomas states that on or about May 19, 2006, PSI and ETS SOW entered into the third trade agreement for an additional 20 containers of Brazilian sugar to be shipped in June 2006 to ETS SOW at Conakry, Guinea at the agreed upon

---

[2] Undated SOW Affidavit at paragraph 3.

[3] We note, nevertheless, that Plaintiff's assertion that all the agreements were "oral agreements" is completely belied by his signature on the March 9th, 2006 Agreement signed in Defendant's offices (see Defendant's Exhibit "A"), and further, Defendant's signature on the proforma invoice for the April 12th, 2006 Agreement, (Defendant's Exhibit "C") followed thereafter by the written confirmation of that April 12th, 2006 Agreement (Defendant's Exhibit "D"), receipt of which the Defendant has admitted (SOW Affidavit paragraph 5.)

2

price U.S. $517 per metric ton CIF (cost, insurance and freight to Conakry from Brazil all included in the sale price.) The contract for this third trade was prepared by Ms. Thomas in PSI's office, signed by Ms. Thomas and sent to ETS SOW by email. A copy of that third contract, as it was transmitted to ETS SOW, including the email transmittal message, was included in Ms. Thomas' first Declaration as Exhibit "E". On May 20, 2006, ETS SOW, signed the May 19th 2006 Agreement and returned the signature page of same to PSI via email. A copy of that email, together with the attached signed confirmation of sale, is included herewith as Exhibit "F". This May 19th 2006 Agreement included the arbitration clause directly above the Plaintiff's signature.[4]

Nowhere in its opposition submissions does the Plaintiff deny the truthfulness of this statement of facts by PSI's Ms. Thomas. Rather, Plaintiff seems to dance around the issue of the terms in the May 19th 2006 Agreement by stating, in its discussion of the April 12th, 2006 Agreement, merely, "*So too was my understanding of the terms of the agreement for the third shipment.*"[5]

Neither does Plaintiff deny, in Mr. Sow's Affidavit or elsewhere, that Mr. Sow actually signed the May 19th 2006 Agreement. Curiously, in the Declaration by Mr. Watters, Plaintiff attempts to cast doubt on the veracity of the Plaintiff's signature on the May 19th 2006 Agreement by stating, "*Defendant's Exhibit F purports to contain the plaintiff's signature for that agreement but excludes the first page.*"[6] Mr. Watters, we propose, may speculate all he wishes, but it is only for his client to tell the Court if he did not sign the agreement. Tellingly, Mr. Sow does not deny signing the May 19th 2006 Agreement.

---

[4] Ms. Thomas' first Declaration at paragraphs 18-21.
[5] SOW Affidavit paragraph 5.
[6] Watter's Declaration paragraph 6.

3

Mr. Sow cannot deny signing the May 19th 2006 Agreement because all of the contemporaneous communications prove that he did sign that agreement and, further, he knew well what he was signing was a binding contract. These facts are made clear in the remaining documents produced with the two Thomas Declarations, a recap of which we provide herewith in chronological order for the convenience of the Court:

Exhibit H - Plaintiff's email of May 19, 2006 wherein Mr. Sow states, *"Ok we confirm you price us$517/Mt and date of shipment for June 10, 2006 and Jun.24, 2006 no problem."* This price and the shipment dates match the May 19th 2006 Agreement, signed by the Plaintiff with the arbitration clause.[7]

Exhibit E – PSI's outbound email to Plaintiff with the attached written confirmation of the May 19th 2006 Agreement appearing as the last two pages. In her Reply Declaration Ms. Thomas points to the 4th and last page of that exhibit and notes that the top line of same, after the PSI letterhead, reads "Phytosanitary Certificate". This is one of the documents in the list of documents which list commenced on the 3rd and second to last page of that exhibit.[8]

Exhibit F - Plaintiff's email of May 20th, 2006 by which Plaintiff transmitted the above mentioned last page of the May 19th, 2006 Agreement, the relevant signature page, back to PSI. This fact is confirmed by the Plaintiff's statement in that email – *"countersigned and returned to you, please check and confirm receipt asap!"* Ms. Thomas again points out that the last page, page two, of Exhibit F has as its top line, after the PSI letterhead, "Phytosanitary Certificate", the same as the outbound copy in fourth page of Exhibit E. There can be no dispute that this is the Plaintiff returning to PSI the countersigned May 19th 2006 Agreement.[9]

---

[7] Thomas Reply Declaration paragraph 8.
[8] Thomas Reply Declaration paragraph 4.
[9] Thomas Reply Declaration paragraph 5.

4

Exhibit G – Plaintiff's email message of June 6, 2006, wherein Mr. Sow states "*I want you to remember that our Sales contract price signe (sic) is $517/Mt!*" That is a clear reference to the "signed" contract of May 19th, 2006, the only agreement at that price.[10]

Exhibit I - a copy of a letter the Plaintiff sent to PSI's office on or about October 11th, 2006. On the first page, in the first 3 paragraphs, the Plaintiff confirms that there were three shipments agreed, for a total of 50 containers. Of most significance to this motion, is Plaintiff's statement in the third paragraph "*Mrs. Thomas then sent me a contract for another 20x20feet containers of sugar on the 19th May 2006 and she asked me to send a copy of by [sic] business license and my Commercial ID. I signed and returned the documents as requested.*" *(Underlining added for emphasis.)*

Mr. Sow cannot now deny that he signed the May 19th 2006 Agreement which included the arbitration clause at issue in this motion. A jury could not conclude otherwise. Mr. Sow's signature on the May 19th 2006 Agreement, a document which he has repeatedly and contemporaneously acknowledged as a signed contract, and one which contains an arbitration clause directly above his signature, precludes all further denials that the Plaintiff did not agree to arbitration.[11]

## II.

## DEFENDANT'S MOTION SHOULD BE GRANTED EVEN WHEN APPLYING A SUMMARY JUDGMENT STANDARD

---

[10] Thomas Declaration paragraph 22.
[11] We note hear for the record that the May 19, 2006 Agreement contains a typographical error noting the date as May 19, 2005. The contemporaneous correspondence establishes beyond date that the correct date for that agreement is 2006, not 2005. (See also Thomas Reply Declaration paragraph 7.

5

Plaintiff argues that there exists an issue of fact with respect to its entering into the arbitration agreement, and thus it is entitled to a trial by jury on the issue.[12] Defendant maintains its position that there is no issue of fact with respect to the operative May 19th, 2006 Agreement, and it is beyond all quibble that the Plaintiff entered into that contract, signing same and agreeing to the arbitration clause therein.

Our Second Circuit has held:

> In the context of motions to compel arbitration brought under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4 (2000), the court applies a standard similar to that applicable for a motion for summary judgment. Par-Knit Mills v. Stockbridge Fabrics Co., 636 F.2d 51, 54 n.9 (3d Cir. 1980); Doctor's Associates v. Distajo, 944 F. Supp. 1010, 1014 (D. Conn. 1996), aff'd, 107 F.3d 126 (2d Cir. 1997). If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary. 9 U.S.C. § 4. *** [T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability, regardless of whether the relief sought is an order to compel arbitration or to prevent arbitration.

*Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)

The summary judgment standard applicable in this Court was neatly summarized in *Grain Traders v. Citibank, N.A.*, 960 F. Supp. 784, 788 (SDNY 1997), as follows:

> Summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). Accordingly, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). To defeat a motion for summary judgment, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. The non-moving party may not rest upon mere "conclusory allegations or denials," but must set forth "'concrete particulars'" showing that a trial is needed. National Union Fire Ins. Co. v. DeLoach, 708 F. Supp. 1371, 1379 (S.D.N.Y. 1989) (quoting R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984)). There is no issue for trial unless there exists sufficient evidence in the record to support a jury verdict in favor of

---

[12] Watters Declaration at paragraphs 7, 8, 9 & 19.

the party opposing summary judgment. Anderson, 477 U.S. at 249-50. As the Court held in Anderson, "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).

With this standard in mind, Defendant maintains that, with respect to the operative May 19th 2006 Agreement, there is no issue for trial, nor is there sufficient credible evidence in the record to support a jury verdict opposing summary judgment. The Plaintiff has not denied, nor can he in any credible manner deny, that he signed the May 19th 2006 Agreement which he clearly understood was a contract. Nor can he deny that such contract, as signed by him, contained the arbitration agreement directly above his signature. There is no issue for a jury to decide.

Mr. Sow, cannot rest on the "conclusory allegations or denials" in his affidavit, or those of his attorneys. Example of Mr. Sow's conclusory allegations is the statement of his purported undisclosed subjective intent that he "had no intention of agreeing to arbitration"[13]; or that it "would make no sense for me to agree to arbitration" because of the alleged costs of initiating an arbitration.[14] His signature on the May 19th 2006 Agreement belies his undisclosed intent. His objective intent was to enter into the May 19th 2006 Agreement, intent which he manifested by signing that agreement and returning the signature page to PSI. There is nothing ambiguous about the language in that agreement. If the disputed language is unambiguous the Court must interpret it and resolve the dispute as a matter of law, without considering extrinsic evidence. *Burger King v. Horn & Hardart Co.*, 893 F.2d 525, 527 (2d Cir. 1990). There is no issue of fact to put to a jury.

---

[13] Sow Affidavit paragraph 5.
[14] Sow Affidavit paragraph 7.

7

We also note that Mr. Sow gives no documentary support whatsoever for his statement that the cost of initiating arbitration proceedings would be $24,000.00.[15] It is hard to justify this statement as a "fact" that might have been in Mr. Sow's mind at the time of contracting in May 2006, when in the previous paragraph Mr. Sow states "I was unaware of industry practice and/or custom." How is it that Mr. Sow, in the Spring of 2006, with no knowledge of industry practice and/or customs, would have known the costs of initiating an RSA Arbitration? We ask the Court to consider these two contradictory statements when considering what weight to attach to Mr. Sow's Affidavit.

In any case, as noted in the Declaration of the highly qualified Mr. David Barnett, Mr. Sow's understanding of the costs to initiate an RSA Arbitration is mistaken. The true costs would be in the area of only $10,000.00[16], which costs are normally recoverable for the prevailing party.[17]

If the Court, in providing every benefit of the doubt to the Plaintiff, nevertheless wished to further investigate the intent of the parties in agreeing to arbitration, we urge the Court to consider the 2007 correspondence from the Plaintiff's attorneys to the undersigned offices.[18] In their letter of May 4, 2007, (Exhibit K) the Plaintiff's attorneys, on behalf of the Plaintiff, by not objecting to the arbitration venue, thereby express the Plaintiff's agreement to arbitrate the disputes between the parties. This is followed by their letter of June 4, 2007, (Exhibit L), wherein they provide the "Notice of Intention to Submit to Arbitration" called for in the RSA rules. It is hard to imagine a scenario where the Plaintiff's attorneys would take these steps without first determining Plaintiff's understanding that he had agreed to arbitrate disputes.

---

[15] Sow Affidavit paragraph 7.
[16] Barnett Declaration paragraph 11.
[17] Barnett Declaration paragraph 12.
[18] Exhibits K & L to the Crilley Reply Declaration.

8

Defendant's motion should be granted, even when applying a summary judgment standard, as the Plaintiff has failed to come forward with any evidence that is probative or even slightly colorable, beyond mere conclusory allegations or denials.

## CONCLUSION

For all the foregoing reasons, PSI respectfully requests that its motion to compel arbitration be granted, that the present action be stayed pending completion of the London arbitration and that PSI be granted such other and further relief as the Court deems just and proper in the premises.

Dated: New York, New York
August 4, 2008

Respectfully submitted,

Patrick C. Crilley (PC 9057)
Of Counsel to
Richard A. Zimmerman (RZ 0963)
Attorney for Defendant
233 Broadway – Suite 2202
New York, NY 10279
(212) 619-1919

To:   Kyle B. Watters, Esq.
      WATTERS & SVETKEY, LLP
      Attorneys for Plaintiff
      286 Madison Avenue – Suite 1800
      New York, NY 10017
      (212) 679-8999

9