Richard A. Zimmerman, Esq.
Attorney for Plaintiff
233 Broadway – Suite 2202
New York, NY 10279
Richard A. Zimmerman (RZ 0963)
(212) 962-1818
Patrick C. Crilley (PC 9057)
*Of Counsel*
(212) 619-1919

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
AMADOU BHOYE SOW,                                    ECF CASE

                Plaintiff,                08 Civ. 4114 (CM)

   -against-                                           **REPLY
                                                             DECLARATION OF
PS INTERNATIONAL, LTD.                               BIRGITTA THOMAS**

                Defendant.
------------------------------------------------------x

**Pursuant to 28 U.S.C. §1746, Birgitta I. Thomas declares as follows:**

1. I am an International Trader, specializing in the sugar trade, employed with PS International, Ltd., ("PSI") a corporation duly organized under the laws of Indiana, with its main corporate offices presently at 1414 Raleigh Road, Suite 205, Chapel Hill, North Carolina 27517, and the defendant in the above captioned action.

2. I make this Reply Declaration in support of PSI's motion to compel arbitration in London in accordance with the terms of the underlying contract of sale and in response to the undated Affidavit of the Plaintiff attached to the Declaration of Plaintiff's attorney, Mr. Kyle B. Watters, as Exhibit 1.

3. As I explained in my first Declaration of June 2, 2008, PSI entered into three separate contracts with the Plaintiff. (See my June 2, Declaration: Exhibit A – Contracted Dated March 9, 2006; Exhibit D – Contract dated April 12, 2006; and Exhibits E & F – Contract Dated May 19, 2006.) Contrary to Plaintiff's allegations in the Complaint, none of these contracts were oral agreements. Each of the three contracts were written agreements arrived at through free negotiations between the parties.

4. For clarification, Exhibit E of my June 2, 2008 Declaration (hereinafter "First Declaration") is a copy of my outbound email to plaintiff with the attached written confirmation of the May 19th, 2006 Agreement appearing as the last two pages. I bring the Court's attention to the 4th and last page of that exhibit and note that the top line of same, after the PSI letterhead reads "Phytosanitary Certificate". This is one of the documents in the list of documents which commenced on the 3rd and second to last page of that exhibit.

5. Exhibit F is a two page exhibit containing the email by which the above mentioned last page of the May 19th, 2006 Agreement was transmitted back to PSI by the Plaintiff. This is confirmed by the plaintiff's own statement in that email – "countersigned and returned to you, please check and confirm receipt asap!" I bring the Court's attention to the last page, page two, of Exhibit F and again point out that the top line of same, after the PSI letterhead, is again "Phytosanitary Certificate", the same as the outbound copy in Exhibit E at page four. There can be no dispute that this is the Plaintiff returning to PSI the countersigned May 19, 2006 Agreement for the third shipment of 20 containers.

6. It is in my understanding, quite incredible that the Plaintiff can deny that it agreed to arbitration when the arbitration clause appears directly above the Plaintiff's signature on this May 19th, 2006 Agreement.

7. In addition, I have noted that this May 19, 2006 agreement contains a typographical error as it is dated May 19, 2005. Of course we had no dealings with the Plaintiff prior to March 9th, 2006, a fact confirmed by the Plaintiff in his Affidavit at paragraph 6, so there can be no question that the correct date for this agreement is May 19, 2006, the typo not withstanding.

8. This fact is further confirmed in Exhibit G to my first Declaration wherein the Plaintiff confirms "I want you to remember that our Sales contract price signe [sic] is $517/MT!" This is the sales contract price of the May 19, 2006 Agreement. I attach hereto as Exhibit H, to remove all doubt, Plaintiff's email of May 19, 2006 wherein he states, "Ok we confirm you price us$517/Mt and date of shipment for June 10, 2006 and Jun.24, 2006 no problem." This amount and the shipment dates match the May 19th, 2006 written Agreement, signed by the Plaintiff with the arbitration clause.

9. Additionally, I attach hereto as Exhibit I, a copy of a letter the Plaintiff sent to our office on or about October 11th, 2006. On the first page, in the first 3 paragraphs, the Plaintiff confirms that there were three shipments agreed, for a total of 50 containers.

10. Of most significance to this motion, is Plaintiff's statement in the third paragraph "Mrs. Thomas then sent me a contract for another 20x20feet containers of sugar on the 19th May 2006 and she asked me to send a copy of by [sic] business license and my Commercial ID. <u>I signed and returned the documents as requested.</u>" (Underlining added for emphasis.)

11. I cannot understand how the Plaintiff can allege that our agreements were "oral agreements" when he has acknowledged signing the March 9th, 2006 Agreement in our office, receiving the April 12th, 2006 Agreement and, finally, receiving, signing and returning this May 19, 2008 Agreement as a contract with his signature directly below the noted arbitration agreement.

12. I also wish to bring the Court's attention to, what I believe to be another anomaly in the Plaintiff's affidavit. In paragraph 6 Plaintiff claims to have had "no prior experience in importing of sugar until that time [March 9th, 2006]." He states "I was unaware of industry practice and/or custom." I believe this statement to be false and made to persuade the Court that this Plaintiff was some "mere babe in the woods."

13. In fact, it was the Plaintiff who contacted PSI out of the blue and presented himself in person at our offices. He portrayed himself as an experienced and worldly commodities trader, explaining that he was passing through on his way home from a business trip to Singapore. He advised us he had numerous trading partners in New York, where he often visited. With respect to the sugar trade, he was conversant with the language of the trade, knew the various specifications for the sugar products used in international trade and knew that PSI was a member of the Refined Sugar Association ("RSA"). He even commented on PSI's RSA Membership Certificate which he saw on the wall of the PSI office during his visit on March 9, 2006.

14. I believe that the Plaintiff, at the time he was trading with PSI, was completely aware of industry practice and/or custom, including RSA arbitration.

15. In the time between our first agreement, the March 9th, 2006 Agreement, which was completed and signed hastily in our office on that same day, and our second contract, the April 12th, 2006 Agreement, I explained to the Plaintiff in telephone discussions (we spoke almost two or three times daily on the phone during the entire period in question) that in my rush to write up the contract I had inadvertently omitted the arbitration clause from the first contract, as well as a more detailed description of the sugar. I did include these terms in the contracts for the second and third agreements. At no time whatsoever did the Plaintiff ever object to or even question the inclusion of the arbitration agreement.

16. As explained, the arbitration clause appeared in both the April 12, 2006 Agreement and the May 19th, 2006 Agreement. Plaintiff confirmed in his Affidavit that he received the April 12th, 2006 Agreement. (Paragraph 5.) Interestingly absent from his affidavit is any statement about the May 19th, 2006 Agreement beyond the elusive "So too was my understanding of the terms of the agreement for the third shipment." (Paragraph 5.)

17. In fact, the Plaintiff agreed to the inclusion of the arbitration agreement in our telephone discussions, did not question nor object to its inclusion on the April 12th, 2006 Agreement and undeniably accepted same in the course of signing and returning the May 19th, 2006 Agreement, his signature directly below that arbitration clause.

18. In closing I wish to correct two typos appearing in my June 2nd, 2008 Declaration, that being the date and location noted for my signature thereon June 2, 2008 at "Chapel Hill, South Carolina", which of course should read, "July 2, 2008, Chapel Hill, North Carolina." These were my attorney's typos and I have since advised him and corrected his calendar and geography.

**I declare under penalty of perjury that the foregoing is true and correct.**

_____
Birgitta I. Thomas

Executed on August 4, 2008
Chapel Hill, North Carolina

**Exhibit "H"**

## Birgitta Thomas

**From:** mamadou tanou diallo [tanousank@yahoo.fr]
**Sent:** Friday, May 19, 2006 1:08 PM
**To:** Birgitta Thomas
**Subject:** RE: AMADOU BHOYE SOW

Dea Sir,
Thanks for your email!
Ok we confirm you price for us$517/Mt and date of shipment for Jun.10,2006 and Jun.24,2006 no problem!
Re: 20containers allready payment finished,
Please we have asked you to ship the 10first containers and 10days after you ship the other 10containers, we need confirmation shipment programme asap!
I am here near the computer and wait your earliest rply

Rgds
Amadou Bhoye SOW

*Birgitta Thomas <bthomas@psinternational.net> a écrit :*

> I need to know about the sugar we offer at USd 517/Mt !!  Need your reply . We can ship 10 on June 10 and then 10 June 24.
> All the 20 contrs have now sailed. On Monday latest Tuesday we will send you the original docs.
>
>
> Best regards,
> **Birgitta Thomas**
> PS International, LTD.
> 1414 Raleigh Road - Suite 205
> Chapel Hill, NC 27517 USA
> Ph: 919-933-7400
> Fax: 919-933-7441
> Mobile: 919-602-6463
> Email: bthomas@psinternational.net
> website: www.psinternational.net
>
>
> -----
> From: mamadou tanou diallo [mailto:tanousank@yahoo.fr]
> Sent: Friday, May 19, 2006 12:26 PM
> To: Birgitta Thomas
> Subject: RE: need to talk to you????
>
> Try with our fix phone 224 30 46 44 99
>
>
> *Birgitta Thomas <bthomas@psinternational.net> a écrit :*

1/22/2007

**Exhibit "I"**

## ETS. Sow Amadou Bhoye & Freres

B.p. 3546 Conakry, République de Guinée
Tel +224 3046 4499
Fax +224 3046 1872
Mobile +224 60253393 /+64288791

Ref// Sugar shipments to Conakry – Republic of Guinea
Refund of usd 167,930

Dear Sirs,

Reference is made to our meeting in your office and agreement to ship sugar in containers to Conakry. When I visited you office and discussed with Mrs. Thomas, we agreed to ship 10x20feet container of sugar to Conakry:
- We signed a contract for the 10x20feet containers of sugar and I was asked to make a deposit, which I did.
- The Port Line bill of lading (SSZ0638 -03060035) copy was sent to me and I paid the remainder in full.
- Containers arrived and we took delivery of the cargo.

After this I asked Mrs. Thomas for 20x20feet containers of sugar separately after the first successful shipment. We agreed that she will load 10x20feet containers of sugar every two weeks in order to provide time for delivery and avoid over stock. She sent ma a copy of the Pro Forma Invoice on 12th April 2006.

Mrs. Thomas then sent me a contract for another 20x20feet containers of sugar on the 19th May 2006 and she asked me to send a copy of by business license and my Commercial ID. I signed and returned documents as requested. Then she informed me that 10x20feet containers of sugar for which she sent the pro forma invoice (covering 20x20feet boxes) have arrived.
I then sent some money usd 160,000 in various transfers (she confirmed receipt of amount on 12th May2006). She sent me the Maersk line original bills of lading (851004148) by FEDEX. After this I had a remainder of usd 19,330 with your company. I took delivery of the 10x20feet ( Bill of lading 851004148) containers but found out that customs duty has gone up and I was making loss of usd 15,000 if I sold all the sugar after delivery.

I then informed Mrs. Thomas that I am making loss on this business and sought some assistance and she reiterated that your company can not assist with problems related to customs duties in Guinea. Then I said please stop the loading as this will lead to losses for all the remaining 30x20feet sugar containers to come.
To our surprise Mrs. Thomas sent a list of containers ( for bill of lading 850982451 10x20feet containers) on the 11th of July asking me to check the were about of those boxes. I checked with Maersk Line and was informed that the containers have arrived since the 8th of June with the first shipment on B/L 851004148. You can see it took one month to inform me about the arrival as the 20x20feet boxes arrived on the same day 8th June 2006. I called her and told her that the containers have been here for over a month. She said it was Maersk Line's fault for loading the boxes on the same time.

I told her to send the 10 boxes to Guinea Bissau. She came back after sometime and said she has not received any information about Bissau port and she cannot export them to Bissau. She asked me to contact Maersk Line myself and see if I can arrange the export to Bissau. I went to Maersk Line and it took some time for me to obtain the tariff for the export. During this period I was informed my Maersk that Mrs. Thomas has asked to change the consignee name to **Mamadou Bobo Sow**. This new customer went to customs and found that duties were high and never showed up in Maersk afterwards.
I called Mrs. Thomas and asked about my money and she said she can absorb the storage and demurrage with Maersk line because they were responsible to bring all the boxes together. Then I said if she is taken the storage and demurrage then I will accept the cargo. The following day, I was informed by Maersk Line that there were 30x20feet containers of sugar lying in the terminal under my name as consignee. This involved bills of lading 851299865 and 851299874 covering 20x20feet containers. I was shocked. The people in Maersk sent her a message and she confirmed that I was aware of all the containers.

She said she was going to take responsibility of storage and demurrage up to 3rd August 2006, if I paid the money. So there were 20x20ft containers of sugar pending and I was discussing only 10. Mrs. Thomas said according to company policy if I paid a deposit for the second 20x20feet boxes she will release the 10x20feet containers that I had already customs cleared. I then transferred another usd 28,000. This gave a total of usd 167,930 in my favour with her.
Mrs. Thomas instead of sending the cargo release message she said if I do not pay usd 46,000 she will not release anything. I told her that I had no cash flow so she has to release the 10 boxes and then we shall continue with the remaining 20x20feet boxes after a few days. She refused to send the release. She then asked me to transfer to her usd 9,000 but I told her I have spent some money in customs clearance and at that moment I did not have cash.

All this backwards and forwards was time consuming and then Mrs. Thomas asked me how I am going to settle for the remaining 20x20feet containers. I told her that if I sold all the sugar at that time I will be loosing usd 112,000 for the 40x20feet boxes. I told her if I lost that amount in one go of the first business we did together I will go out of business. She then called me but line was not clear and she promised to call back.
I went to Maersk Line and they informed me that she had released the cargo to a new consignee (Ets. Diallo and Ly). I was shocked again. With all the money she has for me and the amount I already paid to customs for clearing the cargo. The new consignee came to me and said that customs is refusing to allow them to take delivery since my company had made the payments for the clearance. They asked if I could accept they take the cargo out to avoid seizure by customs (cargo has over passed the allow free time in terminal of 90 days). I agreed to let them take delivery to avoid customs seizure.

I called Mrs. Thomas and requested that she transfers my money to my account in the USA but she said she will not transfer anything until all the containers are out. The containers are now out over a month but she neither picks the phone nor reply to my e-mails.

According to the above you can see that I have been put under unnecessary pressure due to poor planning and lack of information. I would like a friendly end to matter and hereby requesting you to look into this matter and assist without prejudice.

Elhadj Amadou Bhoye Sow

*[signature]* 11-10-06